IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CURT THOMAS, | ) | |
| | ) | Civil Action No. 10 - 7 |
| Plaintiff, | ) | Judge David S. Cercone |
| | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | |
| PENNSYLVANIA BOARD OF | ) | |
| PROBATION & PAROLE; CYNTHIA | ) | |
| DAUB *Secretary*; LOUIS FOLINO, | ) | |
| *Superintendent*; UNIT MANAGER PAUL | ) | |
| PALYA; *Counselor*; MARIE | ) | |
| BALESTRIERI; DOCTOR JIN, *Medical* | ) | |
| *Director; Parole Interviewer* MR. | ) | |
| PARKER; CAPTAIN HAYWOOD; AND | ) | |
| CAPTAIN ODDO. | ) | |
| Defendants. | | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

I.    **RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss filed by Defendant Dr. Jin (ECF

No. 38) be granted, that the Motion to Dismiss filed by Defendants Marie Balestrieri, Cynthia Daub,

Louis Folino, Paul Palya, and the Pennsylvania Board of Probation & Parole (ECF No. 40) be

granted, and that the Second Amended Complaint be dismissed as to the unserved Defendants under

the PLRA.

II.    **REPORT**

Plaintiff, Curt Thomas, an inmate currently confined at the State Correctional Institution at

Graterford, Pennsylvania, commenced this action under 42 U.S.C. § 1983 alleging violations of his

constitutional rights against the following Defendants:  the Pennsylvania Board of Probation &

Parole (Board); Cynthia Daub, Secretary of the Board; Louis Folino, Superintendent of SCI-Greene;

Unit Manager Paul Palya; Counselor Marie Balestrieri; Doctor Jin, Medical Director; Mr. Parker, Parole Interviewer; Captain Haywood; and Captain Oddo. All of the Defendants are sued in their individual and official capacities. Plaintiff filed his original complaint in the United States District Court for the Eastern District of Pennsylvania on October 30, 2009. On December 31, 2009, Plaintiff filed a Motion to File an Amended Complaint (ECF No. 6). Subsequently, the case was transferred to this Court on January 5, 2010.

On May 11, 2010, this Court denied Plaintiff's Motion to Amend as moot noting that he was entitled to amend his complaint once without leave of Court as long as a responsive pleading had not been filed, as was the case here (ECF No. 8). The Court ordered Plaintiff to file an amended complaint no later than June 1, 2010. On June 24, 2010, Plaintiff filed an Amended Complaint along with several exhibits in support (ECF Nos. 13 & 14). In response, on July 19, 2010, the Board, Daub, Folino, Palya and Balestrieri (the Commonwealth Defendants) filed a Motion to Dismiss (ECF No. 16) pursuant to 42 U.S.C. § 1915 to revoke Plaintiff's *in forma pauperis status* and dismiss the case without prejudice to reopening when Plaintiff had paid the full filing fee.[1] That motion was withdrawn and denied as moot when the Commonwealth Defendants became aware that they had relied in part on several frivolous federal court filings by another inmate with an almost-identical name.

On August 12, 2010, the Commonwealth Defendants filed a Motion for More Definite Statement (ECF No. 28), which was granted by the Court on August 13, 2010 (ECF No. 31). In response, on August 30, 2010, Plaintiff filed a second Amended Complaint with supporting exhibits (ECF No. 36). On September 9, 2010, the Commonwealth Defendants (ECF No. 40) and Defendant

---

1. On August 2, 2010, Defendant Jin filed a similar Motion to Dismiss (ECF No. 26).

Jin (ECF No. 38) both filed another motion to dismiss. On September 20, 2010, Plaintiff filed a

Response to the pending motions (ECF No. 43). Thus, the motions are ripe for review by this Court.

A. <u>Standards of Review</u>

Presently pending are motions to dismiss filed by Defendant Jin (ECF No. 38), and

Defendants Balestrieri, Daub, Folino, Palya, and the Board (ECF No. 40). A motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In

deciding this motion, the court must read the complaint in the light most favorable to the plaintiff

and all well-pleaded, material allegations in the complaint must be taken as true. <u>Estelle v. Gamble</u>,

429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference

to be drawn from the "well-pleaded" allegations of the complaint. <u>Retail Clerks Intern. Ass'n, Local</u>

<u>1625, AFL-CIO v. Schermerhorn</u>, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include

"enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v.Twombly</u>,

550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>,

355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all

reasonable factual inferences must be viewed in the light most favorable to the plaintiff. <u>Angelastro</u>

<u>v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need

not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the

complaint. *See* <u>California Pub. Employee Ret. Sys. v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir.

2004) (citing <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must

the court accept legal conclusions set forth as factual allegations. <u>Bell Atlantic Corp.</u>, 550 U.S. at

555 (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to

raise a right to relief above the speculative level." <u>Bell Atlantic Corp.</u>, 550 U.S. at 555. *See also*

Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Moreover, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). See also Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688 ). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient

4

facts to support a cognizable legal claim. *See, e.g.*, <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378, (5th Cir. 2002); <u>Riddle v. Mondragon</u>, 83 F.3d 1197, 2102 (10th Cir. 1996).

Finally, in <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002) and <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004), the Court of Appeals for the Third Circuit ruled that, in civil rights cases, a District Court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless a curative amendment would be inequitable, futile, or untimely. *Accord* <u>Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 252 (3d Cir. 2007) (observing that in civil rights cases, leave to amend must be granted *sua sponte* before dismissing the complaint).

Three Defendants have not been served in this action: Parole Interviewer Mr. Parker; Captain Haywood; and Captain Oddo. The Court may review the allegations made against these individuals pursuant to the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), wherein Congress adopted major changes affecting federal actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. Pertinent to the case at bar is the new authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims. Specifically, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b).

5

Congress also amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed *in forma pauperis* (IFP), *i.e.*, without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding in forma pauperis and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA, *see* 28 U.S.C. §§ 1915(h); 1915A(c), and he has been granted leave to proceed IFP in this action (ECF No. 4). In addition, Defendants all are employees of a government entity. Thus, Plaintiff's allegations must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and § 1915A. In reviewing complaints under 28 U.S.C. § 1915(e)(2)(B) and § 1915A, a federal court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, Anyanwutaku v. Moore, 151 F.3d 1053 (D.C. Cir. 1998); Mitchell v. Farcass, 112 F.3d 1483, 1484 (11th Cir. 1997); Powell v. Hoover, 956 F. Supp. 564, 568 (M.D. Pa. 1997) (applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)); Tucker v. Angelone, 954 F. Supp. 134 (E.D. Va.), *aff'd*, 116 F.3d 473 (Table) (4th Cir. 1997).

## B. Plaintiff's Relevant Allegations and Facts of Record

The relevant facts of record are as follows. Plaintiff is serving a sentence that he received as a result of a December 24, 1977 incident where he picked up a prostitute in Philadelphia and refused to pay her the agreed upon fee of $20.00. On September 12, 1978, after being found guilty of Rape, Aggravated Assault, Involuntary Deviate Sexual Intercourse, and Criminal Conspiracy (Rape), Plaintiff was sentenced to an aggregate sentence of from 12½ to 30 years incarceration by

Philadelphia County Court of Common Pleas Judge Braig (ECF No. 16-1: DOC Initial Sentence Status Report). At the time of his sentencing Plaintiff was serving a backtime sentence for Aggravated Robbery and, therefore, was unavailable to immediately begin serving the Judge Braig sentence (ECF No. 16-1, p. 2). Plaintiff was released from his backtime sentence on December 9, 1980, at which time he began serving the Judge Braig sentence. After crediting Plaintiff for five days of presentence custody, Plaintiff's effective sentence began on December 4, 1980. Consequently, his minimum release date was June 4, 1993 and his maximum effective date was December 4, 2010 (ECF No. 16-1, p.1).

On April 27, 1994, Plaintiff was released on parole by the Pennsylvania Board of Probation and Parole (the Board) (ECF No. 16-1, pp. 3-4). On March 30, 1996, as recorded on March 26, 1996, the Board determined that Plaintiff was "delinquent" as of February 14, 1996 (ECF No. 16-1, p. 8). On July 23, 1997, the Board issued a warrant to commit and detain Plaintiff as a Technical Parole Violator (TPV) for changing his residence without permission, failing to report as instructed, and failing to report a change of employment status (ECF No. 16-1, p. 9). He was taken into custody that same date. On September 19, 1997, the Board issued a decision, which was recorded on September 5, 1997, to recommit Plaintiff (ECF No. 16-1, p. 10) and ordered Plaintiff to serve twelve months' backtime. At that time, the Board recalculated Plaintiff's sentence by adding one (1) year, five (5) months and nine (9) days (Feb. 14, 1996 to July 23, 1997, which was the period that Plaintiff was considered delinquent prior to his return to custody) to his maximum release date, which resulted in a new maximum date of May 13, 2012. The revised maximum release date is recorded on the Board's September 19, 1997 Decision (ECF No. 16-1, p. 11). As a consequence, on October 7, 1997, the Pennsylvania Department of Corrections (DOC) updated its records accordingly (ECF

no. 16-1, p. 12). This document also clearly indicates that Plaintiff lost one year, five months and nine days due to his delinquency.

Plaintiff's applications for release on reparole were denied by the Board on November 17, 1998 (ECF No. 16-1, p. 15) and September 2, 1999 (ECF No. 16-1, p. 16). On September 27, 2000, the Board approved Plaintiff's application for reparole (ECF No. 16-1, p. 17) and he was released from custody on December 27, 2000 (ECF No. 16-1, p. 20).

In a decision dated June 7, 2002, the Board declared Plaintiff delinquent as of May 29, 2002 (ECF No. 16-1, p. 23). On November 30, 2002 (six (6) months and one (1) day after being declared delinquent), the Philadelphia Police Department arrested Plaintiff for Simple Assault, Recklessly Endangering Another Person, and Retail Theft. As a consequence, the Board lodged a detainer against Plaintiff (ECF No. 16-1, pp. 24, 26). On February 13, 2003, while the new charges were pending, the Board determined Plaintiff to be a TPV for changing his residence without permission, failing to report as instructed and drug use and ordered Plaintiff to serve eighteen months backtime (ECF No. 16-1, p. 27). At that time, the Board again recalculated Plaintiff's sentence by adding the 6 month, 1 day period of delinquency (May 29, 2002 to Nov. 30, 2002) to his maximum release date, which was revised to be November 14, 2012. The February 13, 2003 Board Decision clearly specifies the new maximum release date (ECF No. 16-1, p. 28) and clearly indicates that Plaintiff lost 6 months and one day due to his delinquency (ECF No. 16-1, p. 29). Subsequently, the DOC updated its records in accordance with the revised maximum sentence date (ECF No. 16-1, p. 30). On April 10, 2003, the criminal charges were dismissed (ECF No. 16-1, p. 24).

On April 5, 2005, Plaintiff again was released on reparole. On July 7, 2005, Plaintiff was arrested by the Philadelphia Police Department. As a consequence, on July 29, 2005, the Board

lodged a detainer against Plaintiff at that time (ECF No. 36-2, p. 1) and, while the new charges were

pending, the Board determined Plaintiff to be a TPV for violating his curfew and ordered Plaintiff

to serve eighteen months backtime (ECF No. 36-3, p. 1)  On February 5, 2007, Plaintiff was

acquitted of the pending criminal charges.

On May 29, 2007, the Board rejected Petitioner's application for reparole stating the

following reasons.

> YOUR MINIMIZATION/DENIAL OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
>
> YOUR REFUSAL TO ACCEPT RESPONSIBILITY FOR THE OFFENSE(S) COMMITTED.
>
> THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.
>
> YOUR PRIOR HISTORY OF SUPERVISION FAILURES.
>
> YOUR NEED TO PARTICIPATE IN AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS.
>
> YOUR INSTITUTIONAL BEHAVIOR, INCLUDING REPORTED MISCONDUCTS OR COMMUNITY CORRECTIONS RESIDENCY FAILURE.
>
> YOU WILL BE REVIEWED IN OR AFTER MAY, 2008.

ECF No. 36-4, p. 1.  The Board's decision clearly indicates Plaintiff's maximum expiration date as

November 14, 2012.  ECF No. 36-4, p. 2.

On June 13,  2008, the Board again rejected Petitioner's application for reparole stating the

following reasons.

> THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.
>
> YOUR PRIOR HISTORY OF SUPERVISION FAILURES.

> YOUR NEED TO PARTICIPATE IN AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS.
>
> YOUR INSTITUTIONAL BEHAVIOR, INCLUDING REPORTED MISCONDUCTS OR COMMUNITY CORRECTIONS RESIDENCY FAILURE.
>
> YOU WILL BE REVIEWED IN OR AFTER MAY, 2010, OR EARLIER IF RECOMMENDED BY THE DEPARTMENT OF CORRECTIONS.

ECF No. 36-5, p. 1. The Board's decision clearly indicates Plaintiff's maximum expiration date as

November 14, 2012. ECF No. 36-5, p. 2.

After seeking an early review in October of 2009, on November 17, 2009, the Board again

rejected Petitioner's application for reparole stating the following reasons.

> YOUR NEED TO PARTICIPATE IN AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS.
>
> YOUR RISK AND NEEDS ASSESSMENT INDICATING YOUR LEVEL OF RISK TO THE COMMUNITY.
>
> THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.
>
> YOUR PRIOR UNSATISFACTORY PAROLE SUPERVISION HISTORY.
>
> YOUR FAILURE TO DEMONSTRATE MOTIVATION FOR SUCCESS.
>
> YOUR MINIMIZATION OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
>
> YOUR NEED TO PARTICIPATE IN AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS.
>
> YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.

> YOU ARE TO BE REVIEWED IN OR AFTER 5, 2010.

ECF No. 36-6, p. 1. The Board's decision clearly indicates Plaintiff's maximum expiration date as

November 14, 2012. ECF No. 36-6, p. 2.

On June 29, 2010, the Board again rejected Petitioner's application for reparole stating the

following reasons.

> YOUR RISK AND NEEDS ASSESSMENT INDICATING YOUR LEVEL OF RISK TO THE COMMUNITY.
>
> THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.
>
> YOUR PRIOR UNSATISFACTORY PAROLE SUPERVISION HISTORY.
>
> REPORTS, EVALUATIONS AND ASSESSMENTS/LEVEL OF RISK INDICATES YOUR RISK TO THE COMMUNITY.
>
> YOUR MINIMIZATION OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
>
> YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.
>
> YOU ARE TO SERVE YOUR UNEXPIRED MAXIMUM SENTENCE, 11/14/2012.

ECF No. 36-7, p. 1.

Plaintiff also makes allegations concerning his conditions of confinement in the State

Correctional Institution at Greene, which is located in Waynesburg, Pennsylvania. In this regard,

he first complains that on May 13, 2010, his "legal mail" was opened outside his presence. Plaintiff

filed Grievance No. 318509 concerning this incident and received the following response thereto.

> Mr. Thomas I have been assigned to investigate your claims that on 5-13-2010 your were in fact called to visiting strip area and informed by the "Day Captain" that you had legal mail. You state that the mail

was from the US District Court; Magistrate Judge L. P. Leniham [sic] and was opened outside of your presence which is a violation of the US Third Circuit Court. You state that your envelope was confiscated on DC 154A #A945546 and that you not only want your envelope but you wish to be compensated for a violation of your Civil Rights.

Mr. Thomas on 6.3.2010 I Interviewed Captain Haywood concerning this matter and he relayed that upon receipt of your correspondence (See attached photo) the mailroom had concerns with the way the postage had been applied (approximately 62 stamps) and the fact it was from District Court which normally does not apply postage in this mannerism. Due to the suspicions and concerns raised about the manner in which the correspondence was presented the mailroom contacted the Security Dept for the safety and security of staff and the institution. Captain Haywood proceeded to the mailroom, viewed the correspondence unopened and also had reservation and concerns so he opened the envelope in the secure area and examined the envelope and correspondence. Upon reviewing the correspondence and verifying it was legal he immediately called you to visiting strip with a completed DC 154 #945546 at which point he handed you the correspondence yet retained the envelope for further review and investigation. During this interview Captain Haywood explained to you the concerns of the packaging and postage and the reason that it was opened, to the extent that he showed you a photocopy of the vanilla envelope at which point even yourself stated that it was odd for the court to postage correspondence in this manner. It again was explained that the envelope was still being reviewed. Captain Haywood stated that on 5-18-2010 on the same DC 154, you signed verifying that In fact your envelope was returned to you by the Security Dept.

Mr. Thomas, review of your grievance and the information to include photos provided by Captain Haywood showing the envelope which contained your documentation that was mailed to you from the Third Circuit Court and the manner in which the postage was applied this Investigating officer feels that the mailroom staff and Captain' Haywood were justified in opening the mail in a secure area for the safety and security of the Institution. This Officer also finds that Captain Haywood explained why these actions were taken to you and the sequence of events that were to lake place issuing you a DC154A # A945546 stating the contents were returned on 5/1312010 with the envelope being returned on 5//18/2010 verified by your signature. Captain Haywood also during the course of the investigation revealed

that he had contacted the Third Circuit Court to ascertain the manner ill which they apply postage and faxed them a copy of the image. They advised that they do not apply postage In this manner unless the party involved would have sent a self addressed envelope from their home .. which you denied occurred.

Based on the above the investigation and facts presented your grievance is denied. Mailroom and security took necessary precautions to ensure the safety and security of the Institution. In your grievance you took no actions as required in subsection B prior to the filing which is encouraged in the future. Nor did you list all the information that you were aware of in your Section A in the future please ensure your grievance is completed in its entirety.

ECF No. 36-11, p. 1. Plaintiff unsuccessfully appealed the denial of this grievance through all three levels of review.

Plaintiff also makes allegations against Dr. Jin, the medical director at SCI Greene. Specifically, he states that he received treatment for his Hepatitis C but the treatment made him sick and suicidal so he is no longer able to receive the treatment. He states that he is currently receiving seven daily medications for his various ailments, including high blood pressure, diabetes, allergies, osteoarthritis and sciatica, but no treatment for Hepatitis C. He claims that on September 9, 2009, Dr. Jin saw him about a skin rash problem that had not cleared up after four different medications. Because those medications had not worked, Dr. Jin placed Plaintiff on a steroid, which necessitated that he receive insulin injections (instead of oral medications) to control his blood sugar for the limited time that the steroid increased his blood sugar.

### C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that

as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). Moreover, it is well settled that in order to establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. *See also* Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

D. Parole and Reparole

While none of the complaints are models of clarity, it appears that Plaintiff is raising several claims concerning the denials of his recent applications for reparole. As an initial matter, it must be noted that Plaintiff does not have a constitutionally protected interest in release on parole. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). Further, the existence of a state parole system alone does not create a constitutionally-protected interest. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). Instead a liberty interest for purposes of parole would only arise if the state code requires a parole board to make its decision based upon the existence or absence of a particular factor.

The Pennsylvania Probation and Parole Act does not grant Pennsylvania state prisoners any constitutionally-protected liberty interest in being released on parole or reparole prior to the expiration of their maximum terms.[2]  Pennsylvania law <u>unambiguously</u> provides that a prisoner is <u>not entitled</u> to release from prison until the expiration of his maximum sentence.[3]  Nothing in the Pennsylvania Parole Act (or any other provision of Pennsylvania law) requires the Board to release a prisoner on parole prior to the expiration of his maximum term.  The Board has complete discretion to determine whether an inmate is sufficiently rehabilitated such that he will be permitted to serve the remainder of his sentence outside the prison walls on parole.  Although a prisoner is <u>eligible</u> for parole at the end of his minimum term, nothing in Pennsylvania law or the United States Constitution requires a prisoner to be released at such time.[4]

---

2.  *See, e.g.*, <u>McFadden v. Lehman</u>, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs); <u>Rodgers v. Parole Agent SCI-Frackville, Wech</u>, 916 F. Supp. 474, 476 (E.D. Pa. 1996); <u>McCrery v. Mark</u>, 823 F. Supp. 288 (E.D. Pa. 1993); <u>Rogers v. Pennsylvania Bd. of Probation and Parole</u>, 555 Pa. 285, 724 A.2d 319 (1999) (holding that the grant of parole for Pennsylvania prisoners is nothing more than a possibility; it merely constitutes favor granted by the state as a matter of grace and mercy); <u>Tubbs v. Pennsylvania Bd.. of Probation and Parole</u>, 620 A.2d 584, 586 (Pa. Commw. Ct. 1993) ("it is well settled under Pennsylvania law that a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his sentenced maximum term . . . the [Board] makes each decision on a case by case basis, and prisoners have no guarantees that parole will ever be granted"), *appeal denied*, 637 A.2d 295 (Pa. 1993).

3.  A prisoner's sentence is his maximum term.  <u>Krantz v. Pennsylvania Bd. of Probation & Parole</u>, 86 Pa. Commw. 38, 41, 483 A.2d 1044, 1047 (1984).  The significance of the minimum sentence is that it establishes a parole eligibility date; the only "right" that can be asserted upon serving a minimum sentence is the "right" to apply for parole and to have that application duly considered by the Board.  *Id.*

4.  The existence of a state parole system alone does not create a constitutionally-protected interest.  <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987).

Petitioner seems to be raising the claim that the Board's failure to release him on reparole after he had completed serving his backtime sentences was a violation of his constitutional rights. Specifically, he seems to suggest that, upon expiration of his backtime sentences, he was entitled to release on reparole. However, "[a] recommitted parole violator has no right to reparole at the expiration of a reparole eligibility date, but the violator does have a right to apply for reparole at such expiration." Johnson v. Pennsylvania Board of Probation and Parole, 676 A.2d 1242 (Pa. Commw. 1996) . In other words, once parole is revoked, a former parolee returns to the status of a prisoner who has no liberty interest in being paroled again. Wise v. Pennsylvania Bd. of Probation and Parole, Civil No. 97-4812, 1998 WL 188845, at *3 (E.D. Pa. April 21, 1998) ("A prisoner who is recommitted following a parole violation loses his status as a parolee and has no right to be automatically released on parole after the expiration of his backtime mandated by the Board."); Counts v. Pennsylvania Bd. of Probation and Parole, 487 A.2d 450, 453 (Pa. Commw. 1985) ("The Board's recommitment order revoking his parole and mandating that he serve backtime stripped him of his status as a parolee whereby he lost his constitutionally-protected liberty interest."). Such an individual has no legitimate expectation of being reparoled at the expiration of his backtime. Franklin v. P.O. Edline, Civil No. 93-3871, 1994 WL 192060, at *3 (E.D. Pa. 1994) ("Finally, the 'backtime' imposed by the Board does not automatically entitle Franklin to release after that period."). Thus, Plaintiff has stated no violation of his due process rights in the Board's failure to release him on reparole following service of his backtime sentences.

Plaintiff also seems to suggest that the Board's actions in denying his applications for reparole violated the *Ex Post Facto* Clause of the United States Constitution. U.S. Const. Art. 1, § 10. The Supreme Court repeatedly has reiterated that "[t]o fall within the *Ex Post Facto* prohibition,

a law must be retrospective--that is it must apply to events occurring before its enactment--and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (internal citation and quotation omitted).

In analyzing whether a law violates the *Ex Post Facto* clause, the courts are required to determine whether the law resulted in "a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995). In Morales, the Supreme Court reviewed an *Ex Post Facto* challenge to a California law that allowed the Parole Board, after holding an initial parole hearing, to defer for up to three years subsequent parole suitability hearings for prisoners convicted of multiple murders if the Board found that it was unreasonable to expect that parole would be granted. In analyzing the issue, the Court declined to adopt a single formula to identify *Ex Post Facto* laws; instead, it developed a test in which it inquired whether the law resulted in "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id*. at 509. The Court specifically disagreed with the contention that any risk of enhanced confinement associated with an original offense was barred, stating "[o]ur cases have never accepted this expansive view of the *Ex Post Facto* Clause, and we will not endorse it here." *Id*. at 508. Employing the sufficient risk test, the Court upheld California's amendments as constitutional because they "create[d] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the *Ex Post Facto* Clause." *Id*. at 509 (citing Dobbert v. Florida, 432 U.S. 282, 294 (1977)).

In Garner v. Jones, 529 U.S. 244 (2000), the Supreme Court applied the sufficient risk test to an *Ex Post Facto* challenge to an amendment of a Georgia regulation that allowed the parole board to defer parole review consideration from three years to as long as eight years for inmates convicted of multiple offenses. Employing the sufficient risk test set forth in Morales, the Supreme Court found that this rule change was not invalid on its face because the parole board retained discretion as to how often to set an inmate's date for reconsideration, with eight years being the maximum. Further, the Georgia rules permitted expedited parole reviews to consider a change in circumstances or new information. Jones, 529 U.S. at 254. Notwithstanding, the Supreme Court held that, while the rule at issue did not by its own terms show a significant risk, the burden was on the parole applicant to demonstrate, "by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Id*. at 255. The Court remanded the case for consideration of whether the amendment created a significant risk of increasing petitioner's punishment as applied. *Id*. at 257.

Thus, in order to show that he is entitled to relief in this action, Plaintiff must show that the Board's decisions denying his applications were dictated by a change in the Pennsylvania parole laws that, on their face or as applied to him, created a significant risk of increasing the severity of his punishment. For the reasons that follow, Plaintiff has not met this burden.

In this regard, Plaintiff alleges that the Board violated the *Ex Post Facto* Clause by applying the amended parole guidelines and 1996 amended parole statute, 61 Pa. Stat. § 331.1, both of which were not in effect at the time he was sentenced. When Plaintiff committed his crime, the relevant 1941 parole statute, 61 Pa. Stat. § 331.1, provided as follows.

> The value of parole as a disciplinary and corrective influence and
> process is hereby recognized, and it is declared to be the public policy
> of this Commonwealth that persons subject or sentenced to
> imprisonment for crime shall, on release therefrom, be subjected to
> a period of parole during which their rehabilitation, adjustment and
> restoration to social and economic life and activities shall be aided
> and facilitated by guidance and supervision under a competent and
> efficient parole administration, and to that end it is the intent of this
> act to create a uniform and exclusive system for the administration of
> parole in this Commonwealth.

Act 1941, Aug. 6, P.L. 861 § 1 (West 1995).

In 1995, the Board's parole procedures became the subject of strict scrutiny after several violent criminals previously released on parole by the Board were charged with committing serious violent offenses. One of these criminals, Robert "Mudman" Simon, shot and killed a New Jersey Police Officer during a routine traffic stop three months after his release. These events precipitated an intense investigation of Pennsylvania's parole system by the Senate Judiciary Committee of the Pennsylvania General Assembly, who reported the results of the investigation to the Governor. *See* Stewart v. Pennsylvania Board of Probation and Parole, 714 A.2d 502, 504, n.1 (citing Chairman's Report: Investigation into the Parole of Robert Simon, Senate of Pennsylvania Judiciary Committee, 179th Gen. Assembly 1995 Sess. 1-6 (February 1996)). As a result of this investigation, the Judiciary Committee made recommendations that the emphasis of Pennsylvania's parole philosophy should be changed from prisoner rehabilitation to the protection of public safety, deterrence of crime and incapacitation of criminals. *Id.*

In 1995 and again in 1996, the Parole Act was amended to implement the suggested changes in parole policy for violent offenders. Section 1 of the Parole Act, 61 P.S. § 331.1, was amended as follows.

> In providing these benefits to the criminal justice system, the board shall
> first and foremost seek to protect the safety of the public. In addition to this
> goal, the board shall address input by crime victims and assist in the fair

administration of justice by ensuring the custody, control and treatment of paroled offenders.

Amended Dec. 18, 1996, P.L. 1098, No. 164, § 1.

Also, section 34 of the Parole Act was amended by adding a new section that prohibited the Board from acting upon a parole application for a violent offender unless the inmate had served at least one year in a prerelease center. *See* Myers v. Ridge, 712 A.2d 791, 795-96 (Pa. Commw. 1998), *appeal denied*, 742 A.2d 173, 560 Pa. 677 (1999). Also in section 34.1, the legislature added a definition for the term "crime of violence" to include murder of the third degree, voluntary manslaughter, rape, sexual assault, involuntary deviate sexual intercourse, robbery, arson, aggravated assault or kidnapping, including a conviction for attempt to commit the above-listed crimes. *Id.*

In addition, several internal changes were implemented with respect to the Board's procedures for approving parole applications for criminals convicted of violent offenses. One change concerned the number of votes needed to approve a recommendation to grant parole. Specifically, the revised parole guidelines imposed a requirement for three signatures instead of two before a violent offender may be approved for release on parole. The voting requirements for sex offenders changed from three out of five to five out of nine affirmative votes for parole to be granted. In addition, the Board was directed to certify that the rights of victims were fully complied with whenever the Board approved the parole application for the release of a violent offender. Myers, 712 A.2d at 798.

Finally, in 2009, the General Assembly repealed the Parole Act and enacted the Prisons and Parole Code as set forth in Act. No. 2009-33, Aug. 11, P.L. 147, No. 33, § 11(b) effective date October 13, 2009. The current Act has been consolidated and is currently found at Sections 6101-6309 of the Prisons and Parole Code, 61 Pa. Cons. Stat. §§ 6101-6153.

Plaintiff's *ex post facto* claims challenge the Board's requirement that he be reviewed before his application for parole can be granted and the requirement that he receive a favorable recommendation from the DOC. In analyzing this claim, a brief review of relevant case law is necessary.

I begin with the decision in Mickens-Thomas v. Vaughn, et al., 321 F.3d 374 (3d Cir. 2003) wherein the Court of Appeals for the Third Circuit reviewed the 1995 and 1996 amendments to the Pennsylvania Parole Act in response to a challenge that their application violated the *Ex Post Facto* clause. In Mickens-Thomas, the Third Circuit Court held that the Board's application of the changes made to the Pennsylvania Parole Act in deciding parole applications violated the *Ex Post Facto* clause of the United States Constitution. Specifically, the court found that, although risks to public safety in granting parole always had been a consideration in the decisional process, after 1996, the Board "clearly viewed its statutory mandate to require special emphasis on public safety." *Id.* at 385.

Notwithstanding, in its opinion, the Court of Appeals specifically recognized the applicability of the Pennsylvania Supreme Court plurality decision in Winklespecht v. Bd. of Probation and Parole, 571 Pa. 685, 813 A.2d 688 (2002). In that decision, the Pennsylvania Supreme Court, the final arbiter of the meaning of Pennsylvania law,[5] determined that the 1996 amendments to the parole statute had not worked any substantive change in the parole statute or standards for the Board. As such, the Pennsylvania Supreme Court held that the statutory changes made to the Parole Act in 1995 and 1996 did not violate the *Ex Post Facto* Clause.

> The rewording of 61 P.S. § 331.1 did not create a substantial risk that
> parole would be denied any more frequently than under the previous
> wording, nor did the addition of this language create a new offense or

_____

5. . Gruber v. Owens-Illinois Inc., 899 F.2d 1366, 1369 (3d Cir. 1990)("In interpreting state statutes, decisions of the state's highest court are binding upon us. Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465 (1967)").

increase the penalty for an existing offense. Although the language concerning "protect[ing] the safety of the public" and "assist[ing] in the fair administration of justice" was added to § 331.1 in 1996, these concepts are nothing new to the parole process and have always been underlying concerns. Both versions of § 331.1 leave the decision regarding the grant of parole within the discretion of the Board; the fact that some language was added in 1996, which clarified the policy underlying the parole process, does nothing that increases Winklespecht's punishment. Reordering of considerations for necessary decisions within an unchanged penalty do not rise to an *Ex Post Facto* violation.

Winklespecht, 813 A.2d at 691-2.[6]

In Mickens-Thomas, the Court of Appeals determined that the Winklespecht decision, "made after the Board's actions on Thomas's parole, came too late to alter the Board's view of the statutory amendment on the outcome of this case. Not having the benefit of the Supreme Court decision, the evidence before us shows that the Board interpreted § 331.1 to mandate foremost the consideration of public safety. The Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function." Mickens-Thomas, 321 F.3d at 391.

The Court of Appeals for the Third Circuit since has clarified its holding in Mickens-Thomas, explaining that the retroactive application of the 1996 Amendments is not a *per se* violation of the Ex Post Facto Clause, but the inmate must also establish the second prong of the *ex post facto* analysis. Richardson v. Pennsylvania Bd. of Probation and Parole, 423 F.3d 282, 287-92 (3d Cir. 2005).

The ex post facto inquiry has two prongs: (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change. To violate the Ex Post Facto Clause, a retroactive change in the law or policy must create a sufficient risk of increasing the measure of punishment attached to the

---

6. In Finnegan v. Pennsylvania Bd. of Probation and Parole, 838 A.2d 684 (Pa. 2003), a clear majority of the Supreme Court of Pennsylvania re-affirmed the holding of Winklespecht in response to a mandamus action filed in the Commonwealth Court of Pennsylvania.

covered crimes; a speculative and attenuated possibility of increasing the measure of punishment is not enough.

Richardson, 423 F.3d at 287-288 (internal quotation marks, ellipses and citations omitted). The Court then found Richardson's case distinguishable from Mickens-Thomas.

> We summarize our findings there: (1) We found that the Parole Board relied solely on public safety in denying Thomas parole, while disregarding the Parole Guidelines, the unanimous recommendations of the Department of Corrections, and the evidence of Thomas's rehabilitation; (2) Thomas presented convincing evidence that he had a significant likelihood of parole under the pre-1996 guidelines, but was denied parole under the new policy; and (3) Thomas was able to show that all prisoners whose life sentences had been commuted prior to 1996 had been subsequently paroled.

> Mickens-Thomas may be an exceptional case because of the compelling nature of the evidence of prejudice. We do not require a petitioner to muster evidence of such convincing quality, particularly in the absence of an evidentiary hearing. Nevertheless, our precedents require that a petitioner proffer at least some evidence of disadvantage to warrant habeas relief.

Richardson, 423 F.3d at 293.

The Court of Appeals for the Third Circuit reiterated this holding in Taylor v. Pennsylvania Bd. of Probation and Parole, 181 Fed. App'x 253, 254 (3d Cir. 2006).

> Taylor concentrates on the first prong of the analysis, and we will assume for present purposes that he satisfies that inquiry. However, he must also adduce some evidence that this new law or policy disadvantaged him by creating a significant risk of increasing his punishment. The mere intuition that stricter standards are more likely to lead to an adverse result is insufficient. Rather, Taylor must provide such evidence as indications that he would have been a good candidate for parole under the old law, comparisons of parole rates for prisoners with similar convictions before and after the 1996 amendments, and the extent to which the reasons given for denying him parole would not have been considered before 1996.

> Taylor has made no such showing and, thus, fails the second prong of the ex post facto analysis. Accordingly, we will affirm the judgment of the District Court.

Taylor, 181 Fed. App'x at 254-55 (internal quotations and citations omitted).

The Court revisited this issue in Shaffer v. Meyers, 163 Fed. App'x. 111 (3d Cir. 2006) wherein the petitioner had been convicted of a sexual assault in 1990 and was denied release on parole in 2004 due to his failure to have completed a sex offender program and the lack of a favorable recommendation from corrections officials. In its review of this claim, the Court of Appeals explained as follows.

> . . . With regard to the Ex Post Facto Clause, we emphasize that there are two prongs to a successful claim: Shaffer must show not only that there has been a change in law or policy which has been given retrospective effect but also that its retrospective application to him created a real risk of increasing the measure of his punishment.
>
> In setting forth his claim, Shaffer reads Mickens-Thomas too broadly, at times appearing to interpret that decision as holding that any retroactive application of the amended parole statute violates the Ex Post Facto Clause. However, Mickens-Thomas prevailed because he clearly satisfied both prongs. In his case, the Board had relied solely on public safety in denying parole and disregarded the parole guidelines, the unanimous recommendations of the Department of Corrections, and evidence of his rehabilitation. Moreover, Mickens-Thomas had presented convincing evidence that he had a significant likelihood of parole under the pre-1996 guidelines and had shown that all prisoner's in his situation (prisoners whose life sentences had been commuted before 1996) had been subsequently paroled. As we noted in Richardson, "Mickens-Thomas may be an exceptional case because of the compelling nature of the evidence of prejudice."
>
> Although we do not require a petitioner to provide evidence which is compelling to the same degree, "our precedents require that a petitioner proffer at least some evidence of disadvantage to warrant habeas relief." Shaffer has not done so. Indeed, it is not even clear that he has met the first prong of the analysis, i.e., shown that the Board used new standards, retroactively applied, in denying him parole. Prima facie it does not seem likely that the criteria cited by the Board in Shaffer's case-participation in a treatment program for sex offenders, the recommendation of the Department of Corrections, Shaffer's conduct record and whether he completed any prescribed programs-would not have been considered by the Board pre-amendment, and Shaffer cites no evidence to persuade us otherwise. But even if we assume that the Board would have used different criteria pre-amendment, Shaffer has not provided adequate reasons to

support the contention that application of those criteria would likely have resulted in his release on parole.

Shaffer, 163 Fed. App'x at 113-114 (internal quotations and citations omitted).

The Court expanded this holding in Pleaze v. Klem, 335 Fed. App'x. 168, 170 (3d Cir. 2009). In that case, petitioner was convicted of robbery on March 29, 1999. On April 25, 2001, the DOC issued a Prescriptive Program Plan recommending that he participate in various institutional programs, including sexual offender orientation. Petitioner subsequently completed the recommended programs, including the sexual offender orientation. Following his parole eligibility date of September 29, 2004, the Board denied him parole based on, *inter alia*, his failure to complete additional institutional programs, including, additional sexual offender. Petitioner argued that the Parole Board violated his rights under the *Ex Post Facto* Clause by applying to him the 2000 Sex Offender Treatment statute, 42 Pa. Cons. Stat. § 9718.1, which requires prisoners to participate in a DOC program of counseling or therapy to be eligible for parole. The Court disagreed.

First, the DOC had the ability to, and did, deny parole to some inmates who failed to undergo sexual offender treatment prior to the passage of § 9718.1. Further, the Parole Board has wide discretion to make decisions regarding parole based on a variety of factors. Although the Board cited Pleaze's failure to complete additional sexual offender programs as a factor in denying him parole (though it never referenced § 9718. 1), Pleaze's successful completion of an advanced sexual offender program was one of many factors the Board could consider in evaluating his parole applications. Nothing indicates that the Board intended to retroactively apply the requirements of § 9718.1 to Pleaze or that it made its decision regarding his parole based on improper considerations. The Board never claimed that Pleaze was ineligible for parole by barring him from applying or refusing to consider his application, which is the remedy for failure to comply with § 9718.1.

. . .

Even were we to assume that the Parole Board did apply § 9718.1 to Pleaze, his argument still fails because he cannot meet the second factor

under Richardson, requiring him to show that he "was disadvantaged by the change" in law. Pleaze carries the ultimate burden of establishing that the measure of punishment itself has changed and he must show that as applied to his own sentence the law created a significant risk of increasing his punishment.

Pleaze argues that although the Parole Board did not explicitly cite § 9718.1, it clearly applied it in denying him parole, and that its retroactive application directly resulted in his increased punishment because but for the statute he would not have been required to take a sex offender program. But a speculative and attenuated possibility of increasing the measure of punishment is not enough of a showing to meet Pleaze's burden. . . . [U]nlike the prisoner in Mickens-Thomas, Pleaze has not demonstrated that but for § 9718.1 he would have been paroled, or that other similarly situated prisoners were paroled prior to the passage of the statute.

Pleaze, 335 F.3d at 171-172 (internal quotations and citations omitted).

The most recent decision by the Court of Appeals for the Third Circuit is set forth in Newman v. Beard, 617 F.3d 775 (3d Cir. 2010). Newman was found guilty in 1987 of committing two rapes and related sexual offenses and was sentenced to twenty to forty years imprisonment. After he became eligible for parole in 2007, Newman met with a parole hearing examiner for an interview. The hearing examiner noted that Newman had not attended the sex offender treatment program (SOP) and stated that the Parole Board required the completion of the SOP before parole would be granted. On April 18, 2007, the Board denied Newman's parole application setting forth the following reasons for denying Newman's parole.

Your minimization/denial of the nature and circumstances of the offense(s) committed.

Your refusal to accept responsibility for the offense(s) committed.

Your lack of remorse for the offense(s) committed.

The negative recommendation made by the Department of Corrections.

Your unacceptable compliance with prescribed institutional programs.

Your need to participate in and complete additional institutional programs.

Your interview with the hearing examiner.

> The Parole Board's written decision also stated that at Newman's next interview, the Board will review your file and consider ... whether you have successfully completed a treatment program for sex offenders, whether you have received a favorable recommendation for parole from the Department of Corrections, whether you have maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s), and current mental health evaluation to be available at time of review.

Newman, 617 F.3d at 778.

Newman alleged that the Board improperly applied Pennsylvania's Sex Offender treatment statute stating that he was sentenced in 1988 and the statute was not enacted until 2000. The Court assumed that Newman had met the first prong of his *Ex Post Facto* challenge notwithstanding that the Board's denial did not mention the Sex Offender Treatment Act. *Id*. at *8. Analyzing Newman's claim in that context, the Court denied relief noting that Newman had not alleged the second prong, *i.e.*, that the statute created a significant risk of increasing his punishment. In this regard, the Court found that Newman had not alleged that he would have been paroled but for the new statute and that similarly situated inmates were paroled before the passage of the statute.

> The Supreme Court has recognized that because most offenders will eventually return to society, a paramount objective of the corrections system is the rehabilitation of those committed to its custody. Inasmuch as rehabilitation is a legitimate penological objective and the Supreme Court is satisfied that recognition of one's responsibility for past offenses is a critical first step toward rehabilitation, Newman cannot show that the Parole Board's alleged retroactive application of § 9718.1 created a significant risk of increasing his punishment. Accordingly, the District Court properly dismissed his Ex Post Facto claim.[FN]

> > FN10. As noted above, the Parole Board could have legitimately considered Newman's "general character and history" even under the statute in effect in 1988 when he was sentenced. See 61 P.S. § 331.19 (1988).

Newman, 2010 WL at *9 (internal quotations and citations omitted).

In Plaintiff's case, the Board's most recent determination specifically provides the factors the Board considered in its decision denying petitioner reparole; namely, his risk and needs assessment indicating his level of risk to the community, the negative recommendation by the DOC, his unsatisfactory parole supervision history, his minimization of the nature of the offense, and his lack of remorse . These factors were applicable at the time of Petitioner's criminal conduct and are all factors rationally related to any parole decision, whether made before or after 1996. *See, e.g.*, Farmer v. McVey, Civil No. 09-166, 2011 WL 776213, 12 (M.D. Pa. Jan. 24, 2011) (holding that inmate did not show that the change in the law created an "individualized disadvantage" for him in securing parole because it was evident that the denial of parole was not a function of changes in the law, but rather was a product of the inmate's recidivism and poor risk for parole); Sheffield v. Pennsylvania Dept. of Corrections, Civil No. 07-2046, 2009 WL 210490 (Jan. 26, 2009) (holding that the Board's denial of reparole request based upon the negative recommendation of DOC, assessments of the inmate's prior history of parole supervision failures, and his need to participate in and complete institutional programs did not violate *ex post facto* clause of federal constitution as the inmate failed to show that he had been disadvantaged in any way by the new laws or that he would have been more likely to be granted parole before the new laws were passed); Petty v. Pennsylvania Bd. of Probation and Parole, Civil No. 10-279, 2010 WL 4321601, 11 (E.D. Pa. Oct. 6, 2010) (holding that the mere fact that an inmate was not re-paroled at the conclusion of the back time sentence did not necessarily mean that some sort of "additional punishment" was imposed upon him in violation of the *Ex Post Facto* Clause as the   punishment for his convictions lawfully includes incarceration to the maximum imprisonment date under Pennsylvania law).

Petitioner presents no evidence supporting an inference that he has been disadvantaged in some way by consideration of the 1996 amendments to Pennsylvania's parole law or by the new Sex Offender Treatment law. Specifically, he fails to offer any evidence that he was a good candidate for parole under the criteria in effect before 1996 and makes no statistical showing that inmates convicted of rape, and involuntary deviate sexual intercourse were more likely to be paroled before the 1996 and 2000 changes to the legislation. *See* Richardson, 423 F.3d at 284 (stating that the Pennsylvania Parole Act allows the Board to consider, *inter alia*, "the prisoner's complete criminal record, conduct while in prison, 'physical, mental[,] and behavior condition and history,' the 'nature and circumstances of the offense committed,' and 'the general character and background of the prisoner' " (quoting 61 Pa. Cons. Stat. § 331.19)). Thus, there is no indication that the Board's action in denying Petitioner parole was the result of an illegal application of the Pennsylvania Parole laws. Consequently, he is not demonstrated that the Board, or any member thereof, violated his rights as protected by the *Ex Post Facto* Clause.

E. Expiration of Plaintiff's Sentence

Plaintiff further claims that his sentence has been illegally extended beyond his maximum sentence date due to the actions of the Parole Board and/or the individual Commonwealth Defendants. Specifically, Plaintiff claims that his sentence has been miscalculated to reflect a maximum sentence date of November 14, 2012, which is well beyond his maximum thirty year sentence. Imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment. Sample v. Diecks 885 F.2d 1099, 1108 (3d. Cir. 1989). Thus, these allegations state a claim upon which relief may be granted. Notwithstanding, as Defendants point out, this claim is barred as untimely.

In this regard, the limitations period for civil actions brought under 42 U.S.C. § 1983 is determined by state law.[7]  Under Pennsylvania law, the applicable limitations period for civil rights actions asserted under 42 U.S.C. § 1983 is two years.  *See* 42 Pa. Cons. Stat. § 5524.  The date when a civil rights action accrues (begins to run) is a matter of federal law.  Albright v. Oliver, 510 U.S. 266, 280 n.6 (1994) (J. Ginsburg, concurring).  A claim accrues when the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the Defendant.  *See* Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the limitations period); Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1127 (3d Cir. 1988) (a federal cause of action accrues when the plaintiff is aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong).

Plaintiff's Complaint is signed and dated October 30, 2009.  Due to the two-year limitations period, Plaintiff cannot impose liability against Defendants under 42 U.S.C. § 1983 for events that occurred prior to October 30, 2007.  The record evidence in this case shows the following.  On September 19, 1997, the Board issued a decision, which was recorded on September 5, 1997, to recommit Plaintiff as a Technical Parole Violator (TPV) for changing his residence without permission, failing to report as instructed, and failing to report a change of employment status (ECF No. 16-1, p. 10) and ordered Plaintiff to serve twelve months' backtime.  At that time, the Board recalculated Plaintiff's sentence by adding one (1) year, five (5) months and nine (9) days (Feb. 14, 1996 to July 23, 1997, which was the period that Plaintiff was considered delinquent prior to his return to custody) to his maximum release date, which resulted in a new maximum date of May 13, 2012.  The revised maximum release date clearly is set forth in the Board's

---

7.  *See* Wallace v. Kato, 549 U.S. 384, 387 (2007); Wilson v. Garcia, 471 U.S. 261, 272-76 (1985).

September 19, 1997 Decision (ECF No. 16-1, p. 11). As a consequence, on October 7, 1997, the Pennsylvania Department of Corrections updated its records accordingly (ECF no. 16-1, p. 12). This document also clearly indicates that Plaintiff lost one year, five months and nine days due to his delinquency. On February 13, 2003, the Board determined Plaintiff to be a Technical Parole Violator for changing his residence without permission, failing to report as instructed and drug use and ordered Plaintiff to serve eighteen months backtime (ECF No. 16-1, p. 27). At that time, the Board again recalculated Plaintiff's sentence by adding 6 months and 1 day (his period of delinquency from May 29, 2002 to Nov. 30, 2002) to his maximum release date, which was revised to be November 14, 2012. The February 13, 2003 Board Decision clearly specifies the new maximum release date (ECF No. 16-1, p. 28) and clearly indicates that Plaintiff lost 6 months and one day due to his delinquency (ECF No. 16-1, p. 29). Subsequently, the DOC updated its records in accordance with the revised maximum sentence date (ECF No. 16-1, p. 30). Moreover, on May 29, 2007, the Board issued a decision denying Plaintiff reparole. That decision clearly indicates Plaintiff's maximum expiration date as November 14, 2012. ECF No. 36-4, p. 2.

The record evidence clearly shows that Plaintiff knew, or should have known, of his revised maximum sentence well before October of 2007. Consequently, his claim that Defendants illegally extended his maximum sentence is time barred.[8]

---

8. Moreover, as Defendants also point out, Plaintiff's claim that his sentence was illegally extended is without less because the Pennsylvania Parole Act specifically provides that TPVs are only given credit for time served on parole in good standing but with no credit for delinquent time and may be reentered to serve the remainder of their original sentence. *See* 61 P.S. § 331.21a (recodified at 61 Pa. Cons. Stat.§ 6138).

F. <u>Retaliation</u>

Next, Plaintiff claims that Unit Manager Paul Palya and Counselor Marie Balestrieri retaliated against him by failing to give him a recommendation for parole due to his prior lawsuits against other DOC employees. He claims that there is no other explanation for the refusal because he is in compliance with all of his prescriptive programming requirements.[9]

It is well settled that retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment, which is actionable under section 1983. <u>Rauser v. Horn</u>, 241 F.3d 330 (3d Cir. 2001); <u>White v. Napoleon</u>, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* <u>Mt. Healthy City Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977); <u>Anderson v. Davila</u>, 125 F.3d 148, 163 (3d Cir. 1997).

With respect to the first factor, it is well settled that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right. <u>Allah v. Seiverling</u>, 229 F.3d 220, 224-25 (3d Cir. 2000). Accordingly, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied. <u>Rauser</u>, 241 F.3d at 333. Rather, the first requirement a Plaintiff must show is that the conduct which led to the alleged retaliation was constitutionally protected. *Id*.

---

9. The Court notes that Plaintiff's own documents belie this assertion. *See* ECF No. 36-8, p. 1 wherein it is noted that Sex Offender Program Mod-High Intensity "failed to complete."

The second element requires a prisoner to show that he suffered some "adverse action" at the hands of the prison officials. A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *See* Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Adverse actions that are sufficient to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser, 241 F.3d at 333, and placing a prisoner in administrative custody, Allah, 229 F.3d at 225.

The third factor requires that there be a causal link between the exercise of the constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. This may be established by evidence of a temporal proximity between the prisoner's protected activity and the defendant's adverse action; however, the timing of the alleged retaliatory action must be suggestive of retaliatory motive. Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996). It is Plaintiff's burden to prove that the Defendants were motivated by retaliation. Hannon v. Speck, Civil No. 87-3210, 1988 WL 131367, at *4 (E. D. Pa. Dec. 6, 1988) ("In bringing a § 1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor ... was as he alleged.") (internal quotes and citation omitted), *aff'd*, 888 F.2d 1380 (3d Cir. 1989) (Table).

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

In establishing the elements of a retaliation claim, a plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (internal citations omitted). Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Finally, allegations of *de minimis* acts of retaliation do not state a claim under § 1983. Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999); Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) (holding that a *de minimis* retaliatory act is outside the ambit of constitutional protection).

A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. *See* Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); Woods, 60 F.3d at 1165 (prison officials may not retaliate against an inmate for complaining about a guard's misconduct). Plaintiff claims that the retaliation was the result of his filing previous lawsuits. Thus, he has alleged the first element of a retaliation claim.

With respect to the second element, he must allege that he suffered some "adverse action" at the hands of the prison officials. Here, Plaintiff claims that he did not receive a favorable recommendation for parole. For purposes of my analysis, I will assume that this allegation is sufficient to meet the second element.

The third element requires Plaintiff to allege that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. The only allegation Plaintiff makes to support this element is his assertion that the Defendants knew that he had instituted two lawsuits against different employees at different institutions. To show a causal connection, a plaintiff must allege "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007). *See also* Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (holding that the temporal proximity between the protected conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).

The fact of having filed a lawsuit against DOC employee(s) cannot, without more, plausibly constitute a substantial or motivating factor for adverse action. Moreover, the record evidence supports the inference that Plaintiff was denied institutional support for parole on the merits of his case, *i.e.*, his minimization of his offense and refusal to accept full responsibility of his crime. Here, Plaintiff has failed to allege a precise chronology sufficient to infer causation. While "timing plus other evidence may be an appropriate test where the temporal proximity is not so close as to be 'unduly suggestive,' " Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000), Plaintiff has not set forth any other allegation in support of his retaliation claim, despite having amended his complaint twice already. Thus, Defendants' Motion to Dismiss should be granted as to this claim. *Cf*. Alexander v. Fritch, 396 Fed. App'x 867 (3d Cir. 2010) (holding that prisoner could not sustain retaliation claim based on employees' failure to provide favorable parole recommendation).

### G. <u>Claim against Defendant Parker</u>

Plaintiff next seeks to impose liability against Mr. Parker, Parole Interviewer, for extensively questioning him about criminal charges that he was acquitted of. Plaintiff fails to allege what constitutional right Mr. Parker violated and the Court is unaware of any. As his allegations do not state a claim upon which relief may be granted against Mr. Parker, the Complaint should be dismissed against him with prejudice.

### H. <u>Claims against Defendants Haywood Oddo</u>

Plaintiff seeks to impose liability against Defendants Haywood and Oddo for opening his "legal" mail on May 13, 2010 outside his presence. The Court of Appeals for the Third Circuit specifically has held that a single instance of interference with an inmate's mail is not sufficient to constitute a First Amendment violation. *See* <u>Fortune v. Hamberger</u>, 379 Fed. App'x 116, 120 (3d Cir. 2010). Consequently, the Complaint should be dismissed with prejudice against Defendants Hanwood and Oddo.[10]

### I. <u>Defendant Jin</u>

In his Motion to Dismiss, Defendant Jin first asserts that Plaintiff's *In Forma Pauperis* status should be revoked because he has three strikes. In this regard, in the PLRA, Congress adopted a new section known as the "three strikes rule," codified at 28 U.S.C. § 1915(g), which provides as follows.

> (g)     In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is

---

10. Moreover, even were the Court to conclude otherwise, Defendants would be entitled to qualified immunity on the facts as alleged and of record in this action. Thus, the Complaint should be dismissed with prejudice against Defendants Hanwood and Oddo. *See* <u>Doe v. Delie</u>, 257 F.3d 309, 322 (3d Cir. 2001) (affirming District Court's order *sua sponte* dismissing Defendant pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) on the basis of qualified immunity).

> frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Under the three strikes rule, a prisoner who, on three or more prior occasions while incarcerated, has filed an action in a federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, must be denied IFP status unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). Defendant Jin details four lawsuits and appeals which, he asserts, count as "strikes" for purposes of § 1915(g). Two of the proposed "strikes," however, are appeals that were dismissed for failure to pay the filing fee, *i.e.*, for failure to prosecute. A dismissal for failure to prosecute does not qualify as a "strike" for purposes of § 1915(g), because it is not an indication that the case was frivolous, malicious, or that the plaintiff failed to state a claim upon which relief may be granted. Jacobs v. Bayha, Civil No. 07-237, 2009 WL 1790506, 1 (W.D. Pa. June 23, 2009) (citing Butler v. Department of Justice, 492 F.3d 440, 443 (D.C. Cir. 2007). Thus, this basis for dismissal is rejected. Notwithstanding, as explained in full below, the Court agrees that Plaintiff fails to state a claim upon which relief may be granted against Defendant Jin.

With respect to Defendant Jin, the Complaint purports to state a claim for deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments. In order to make out a prima facie case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate

deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825 (1994); Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

To state an Eighth Amendment violation in the context of medical treatment, an inmate must prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 429 U.S. 97 (1976). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Plaintiff's allegations are sufficient to allege the existence of a serious medical need. Notwithstanding, Plaintiff has failed to demonstrate that Defendant Jin acted with deliberate indifference to his condition. The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference. Farmer, 511 U.S. at 837. An official is not deliberately

indifferent if "he fails to alleviate a significant risk that he should have identified." *Id*. Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

The Supreme Court explained the difference between negligence and constitutional claims in Estelle v. Gamble, 429 U.S. 97, 104 (1976). In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck. He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell. He returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor. The following day, his injury was diagnosed as a lower back strain; he was prescribed a pain reliever and a muscle relaxant. Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses. Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light work. During the next two months, Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication. Subsequently, a medical assistant examined Gamble and ordered him hospitalized for treatment of irregular cardiac rhythm.

The Supreme Court held that Gamble's allegations failed to state a claim upon which relief could be granted against the defendant, both in his capacity as a treating physician and as the medical director of the Corrections Department.

> Gamble was seen by medical personnel on 17 occasions spanning a
> 3-month period . . .. They treated his back injury, high blood pressure, and

heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

Gamble, 429 U.S. at 107 (internal citations omitted) (emphasis added).

Like the prisoner in Gamble, Plaintiff at bar has failed to demonstrate that he suffered a constitutional violation, a prerequisite for recovery under 42 U.S.C. § 1983. Plaintiff's own allegations indicate that he is receiving seven daily medications. Plus, he received medical treatment for his Hepatitis C but, by his own admission, it had to be discontinued because it caused complications, including suicidal tendencies. Moreover, Plaintiff was given four medications for a skin rash before he was prescribed a steroid. Because the use of a steroid in diabetes patients may result in high blood sugar, Plaintiff was hospitalized overnight so that his blood sugar could be monitored and he was administered insulin by injection as needed. These allegations show that Plaintiff was provided with superior medical care, possibly far better than he ever could have received on the street.

While an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. A disagreement as to the appropriate choice of medical treatment does not give rise

to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981). Mere disagreements over medical judgment do not state Eighth Amendment claims as there are typically several acceptable ways to treat an illness. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted). *Accord* Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state claim for relief under section 1983).

In sum, there is no allegation that suggests that Defendant Jin knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it or that he had any reason to know that he faced any substantial harm. In fact, Plaintiff's allegations show just the opposite. Accordingly, the Motion to Dismiss filed by Defendant Jin should be granted. Banuelos v. McFarland, 41 F.3d 232 (5th Cir. 1995) (a disagreement between an inmate and his physician concerning whether certain medical care was appropriate is actionable under section 1983 only under exceptional circumstances); Monmouth, 834 F.2d at 346 (deliberate indifference may be shown only where prison officials have actual knowledge of the need for treatment, yet intentionally refuse to provide any appropriate care).

As a final matter, Plaintiff has filed two amended complaints in this action. For the reasons set forth above, the court will not give plaintiff an opportunity to file yet another amended complaint as doing so would be futile. *See* Haagensen v. Supreme Court of Penn., 390 Fed. App'x. 94, 98 (3d Cir. 2010).

## III.   CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by Defendant Dr. Jin (ECF No. 38) be granted, that the Motion to Dismiss filed by Defendants Balestrieri, Daub, Folino, Palya, and the Board (ECF No. 40) be granted, and that the Second Amended Complaint

be dismissed as to the unserved Defendants in accordance with the directives of the Prison Litigation Reform Act under 28 U.S.C. § 1915(e)(2) and/or § 1915A.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights. Brightwell v. Lehman, 637 F.3d 187, 193, n.7 (3d Cir. February 9, 2011).

Dated: May 17, 2011

_____
Lisa Pupo Lenihan
U.S. Magistrate Judge

cc:    Curt Thomas
       AM - 4321
       SCI Graterford
       P. O. Box 244
       Graterford, PA 19426